SMITH PETROLEUM CO. *v.* VAN MOURIK.

1. MINES AND MINERALS—OIL LEASES—POOLING AGREEMENT—ESTOPPEL—FINDING OF COURT—RECORD.

In suit by parties owning lessor and lessee interests under oil leases upon 8 acres of 10-acre tract against owner of 2-acre tract on which producing well was located for an accounting pursuant to alleged pooling arrangement whereby drilling of wells was confined to one for the whole 10-acre tract and royalties were to be divided according to acreage interests, trial court's finding that defendant owner was estopped from

claiming more than amount entitled to under the pooling or community arrangement notwithstanding he had not signed it *held*, not supported by record, irrespective of conservation department's limitation on production in territory involved (Act No. 61, § 13, Pub. Acts 1939).

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—POOLING AGREEMENT—OIL WELLS—STATUTE OF FRAUDS.

Defense in suit for accounting against owners of 2-acre parcel of land upon which producing well had been drilled, brought by owners of lessor and lessee interests in remainder of 10-acre tract, that pooling or community agreement would be within the statute of frauds, not having been raised, is not discussed (3 Comp. Laws 1929, § 13411).

3. MINES AND MINERALS—POOLING AGREEMENT—ACCOUNTING.

Operator of oil well located on a 2-acre tract by virtue of lease with respect thereto was obligated to pay royalties of 1/8 of all oil produced by means of such well to lessors notwithstanding that subsequently a voluntary pooling agreement, signed by other parties in interest in balance of 10-acre tract but not by defendant owners, enabled operator to obtain a permit to operate well as one located on a 10-acre unit (Act No. 61, § 13, Pub. Acts 1939).

4. SAME—POOLING AGREEMENT—OVERRIDING ROYALTIES.

Holders of overriding royalty interests in oil lease pertaining to a 2-acre parcel of land were entitled to only a portion of oil royalty based on production attributable to such parcel rather than production of well located thereon operated under a voluntary pooling agreement and conservation department permit embracing a 10-acre tract which included the land on which the well was located (Act No. 61, § 13, Pub. Acts 1939).

5. APPEAL AND ERROR—COURT RULES—REASONS AND GROUNDS FOR APPEAL.

Appeal is not dismissed notwithstanding appellants' failure to comply with court rule requiring that reasons and grounds for appeal be filed or embodied in the record at the time it was settled in the circuit court and such defect was called to the circuit court's attention, record was settled over objection, and objecting appellee did not then take further steps to correct defect, where record on appeal contains "assignments of error" presenting questions relied upon by appellants in Supreme Court and timely advising appellees of issues involved therein (Court Rule No. 66, § 3 [1933]).

Appeal from Kent; Brown (William B.), J. Submitted April 9, 1942. (Docket No. 50, Calendar No. 41,942.) Decided June 10, 1942.

Bill by Smith Petroleum Company, a corporation, and others against Henry Van Mourik and others for an accounting. Decree for plaintiffs. Defendants Gruenbauer, Bolger, and Milanowski appeal. Reversed in part.

*Alexander, McCaslin & Cholette,* for plaintiffs.

*Wencel A. Milanowski,* for defendants and appellants.

*Douglas, Barbour, Desenburg & Purdy,* for defendant Van Mourik.

North, J. Defendants Gruenbauer own land in Walker township, Kent county, Michigan, on which is located a producing oil well operated by defendant Van Mourik. Plaintiffs are the lessors and lessees of the remaining acreage comprising the 10-acre tract known as the southwest quarter of the northwest quarter of the southwest quarter of section 33, township 7 north, range 12 west, in Kent county. It is the claim of the plaintiffs that they are entitled to share in the proceeds from the Gruenbauer well due to a community agreement whereby all oil produced from any well on the 10-acre tract was to be divided according to the proportion of acreage held by the respective lessors. Defendants Gruenbauer, Bolger and Milanowski, holders of interests in the production on the Gruenbauer property, appeal from a decree by the trial court holding that the Gruenbauers entered into such an agreement and granting plaintiffs an accounting.

On February 20, 1939, the Gruenbauers gave an oil and gas lease to Stephen J. Bolger doing business as the Mt. Pleasant Drilling & Producing Company. He failed to begin drilling and the Gruenbauers thereupon executed another lease of the same premises for oil and gas to Van Mourik on April 26, 1939, which was to be null and void if the Bolger lease proved still binding. Van Mourik began drilling, as required by his lease, and had drilled to a depth of about 1,000 feet and had spent about $5,000 when Bolger filed suit to halt the drilling and cancel the lease of Van Mourik. On August 18, 1939, the circuit court for Kent county held the Bolger lease was still good and that the Van Mourik lease was void. Van Mourik and Bolger then agreed that Bolger would assign to Van Mourik all but ¼ of his overriding royalty in the Gruenbauer property (the Gruenbauers by their lease to Bolger had given him all but a ⅛ land owners' royalty of all the oil and gas produced from their premises), in consideration of Van Mourik's finishing the drilling. This left the original ⅛ interest in the Gruenbauers, a ¼ interest in Bolger and ⅝ interest in Van Mourik. Bolger then made some other assignments of his ¼ remaining interest on September 1, 1939, which do not all appear on the record but which seem to be admitted by all the parties to this suit: Peter J. Bolger, 4/64 overriding royalty; Henry J. Milanowski, 3/64; Wencel A. Milanowski, 3/64; Smith Petroleum Company, 1/64; Edward B. Strom, Successor Trustee, 1/64; leaving 4/64 overriding royalty in Stephen J. Bolger.

Van Mourik completed the drilling operations and a producing oil well was brought in on Gruenbauers' property on or about September 27, 1939. Meanwhile, it had been ordered by the State conservation department on September 13, 1939, that

oil wells in Kent county would be limited to 100 barrels per day for each 10-acre drilling unit, which meant that a 2-acre tract such as the Gruenbauers owned might produce only 20 barrels per day. This limitation on production of oil created a problem for Van Mourik, and also for the Smith Petroleum Company and Strom who held the lessees' interests on the other 8 acres in the 10-acre tract. Van Mourik could not realize enough proceeds from 20 barrels of oil per day to pay his operating expenses, let alone his drilling costs; the lessees of the other land in the tract were obligated to their lessors to drill though the lessees were of the opinion it would have been an economic waste as well as impracticable to drill more than one well in this 10-acre area.

It was under the above circumstances that the first community agreement was attempted as of September 27, 1939. By it, in effect, the Gruenbauer well would have been allowed to produce 100 barrels per day instead of 20 since there would have been a drilling unit of 10 acres instead of 2 acres; also, the proceeds would have been divided in proportion to the number of acres in which each of the parties had an interest. Incidentally, the Gruenbauer tract contained only 1.75 acres in this 10-acre tract set out in the proposed agreement; however, it seems to have been agreed to allot the Gruenbauer share on the basis of a 2-acre ownership. The Gruenbauers refused to sign the proposed pooling agreement. Thereupon a second pooling or community agreement was entered into on October 24, 1939, by the lessees of the 10 acres only whereby Van Mourik took over the operation and management of the entire 10-acre tract and assumed the responsibility for its operation and for paying the royalties to all the lessees and lessors. The State conservation department accepted this agreement November 1,

1939, and from that date allowed production from the Gruenbauer well as though it were located on a 10-acre tract. It is interesting to note here that at that time, the State conservation department would accept a communitization agreement even though it had not been signed by all the interested parties, but that because of the trouble which arose in this case, the department wrote Mr. Smith of the Smith Petroleum Company: "we may find it desirable to call for consent of royalty owners in the community projects that we consider in the future."

Until November 1, 1939, proceeds from the well were divided by defendant Imperial Refining Company, which purchased the oil, according to the provisions of the assignments of interest in the 2 acres. After production of 100 barrels of oil per day began, a new division order or agreement was necessary, if the operation was to be carried on as of a 10-acre unit; but such an order or agreement was not signed by all the parties in interest. The Gruenbauers refused to sign such an agreement. As a result, the proceeds of oil produced, except a sum paid to Van Mourik, have been impounded by the purchaser, the Imperial Refining Company. Plaintiffs brought suit, demanding an accounting. The trial court granted the relief sought by plaintiffs. It was so decreed in consequence of the trial judge finding as follows:

"Gruenbauer claims that he never agreed to enter into the community lease, but I find, as a matter of fact, that he did so agree prior to the well being brought in and then after all the other parties had signed it he refused to sign, and I find that there has been obtained from the communitization a greater production from this well than would otherwise have been permissible. Van Mourik entered into the community lease under which he is required to

make payments to the owners and lessees of the surrounding land in reliance upon Gruenbauer's statement that he would sign the community lease. Gruenbauer is thereby estopped from claiming any greater return than he would have been entitled to if he had actually executed the community lease.''

After careful consideration of the record in this case we are constrained to hold that the testimony does not support or justify the finding of the circuit judge that Gruenbauer ''did so agree (to enter into the community lease) prior to the well being brought in.'' The record shows that neither Mr. Gruenbauer nor his wife agreed to a pooling or communitization of the oil rights in the 10-acre parcel. Plaintiff Smith testified that he knew that Gruenbauer and Bolger never agreed to a communitization; but that he relied on Van Mourik's statement that he would be able to get all the landowners to sign up. Van Mourik testified he had conversations with Mr. Gruenbauer about the time the well was completed. We quote from his direct examination:

''Q. And when was it, relative to the conditions of the well, that you had these conversations with Mr. Gruenbauer?

''A. That was just about the time we completed the well.

''Q. Did you understand that he was satisfied or would be satisfied with the community lease?

''A. At that time he was. * * *

''Q. Did he tell you he would (sign a community lease)?

''A. Well, we didn't talk about the signing of it, but I know he didn't have any objections.''

On further examination by plaintiffs' counsel Van Mourik testified:

''Q. As I understand it, when you first talked to Mr. Gruenbauer about having a community lease,

do I understand you he told you he was agreeable to it?

"*A.* In the beginning he was agreeable to it.

"*Q.* And in your talk to him about it, did he say he expected to get his ⅛ royalty from any more than 2 acres?

"*A.* Not in the beginning. Later on he got greedier and greedier. * * *

"*Q.* * * * When was it he raised the question whether he was entitled to royalty on the entire acreage?

"*A.* That is when we came to him about him signing the division order.

"*Q.* About when was that?

"*A.* Very shortly after we made the community lease (between the lessees)."

It might be well to note at this point that on the controversial aspect of this case the interest of defendant Van Mourik coincides with that of plaintiffs. When cross-examined by the attorney for appellants, defendant Van Mourik testified as follows:

"*Q.* Can you relate to the Court the conversation you had with him (Gruenbauer) with respect to these communitizing agreements?

"*A.* Well, I wouldn't remember it word for word. We talked about it—about pooling it.

"*Q.* Anyway, he never talked about communitizing his 2 acres with the 8 acres?

"*A.* He didn't with me. * * *

"*Q.* Well, you knew at that time, Mr. Van Mourik (January 19, 1940), that the Gruenbauers or the Bolgers never consented to any communitization?

"*A.* Well, the impression that I got—

"*Q.* Just answer my question.

"*A.* No, they didn't."

Except as above quoted there is nothing in the record to show whereby Van Mourik could have

gained an impression that the Gruenbauers would sign such a community agreement as was desired by Van Mourik. When asked to testify as to the alleged conversations he had with Mr. Gruenbauer relative to this, Van Mourik could not remember them and he admitted Gruenbauer had never agreed to join in the pooling agreement. As a matter of fact, it would seem that the Gruenbauers would have nothing to gain by entering into such an agreement while plaintiffs would thereby avoid the drilling of other wells and Van Mourik would get his money out faster by producing 100 barrels per day instead of only 20. It could not be argued that Mr. Gruenbauer led Van Mourik into drilling by implying he would sign a community agreement since the conversations appear not to have begun until the well was in or nearly in; and also, Van Mourik had already bound himself in his agreement with Bolger to complete the drilling of the well.

Another phase of the record should be noted which quite conclusively defeats any contention on the part of Van Mourik that the Gruenbauers should be held to be estopped from claiming that they were not parties to the pooling or community contract under which Van Mourik operated the well after November 1, 1939, on the basis of a 10-acre unit, *i.e.*, allowing production at the rate of 100 barrels per day. That permit from the conservation department was obtained on the strength of the so-called community agreement entered into by the lessees of the respective parcels. None of the owners of the land were parties to this community agreement or order. But prior to execution of this so-called community or pool agreement, the Gruenbauers had positively refused to sign a like agreement to which the owners of the land were made parties and which was signed by the owners of the parcels other than the Gruenbauers. It cannot be held under this rec-

ord that there was any conduct on the part of the Gruenbauers which would estop them from now taking the position that they are not bound by either of the two attempts made to communitize or pool their oil interests with those of others interested in the balance of the 10-acre tract.

The defense that the pooling or community agreement would be within the statute of frauds was not raised so will not be discussed.*

Act No. 61, § 13, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 5712–53, Stat. Ann. 1941 Cum. Supp. § 13.139 [13] ), provides as follows:

"The pooling of properties or parts thereof shall be permitted, and, if not agreed upon, the supervisor after conference with and recommendations by the board, may require such pooling in any case when and to the extent that the smallness or shape of a separately owned tract or tracts would, under the enforcement of a uniform spacing plan or proration or drilling unit, otherwise deprive or tend to deprive the owner of such tract of the opportunity to recover or receive his just and equitable share of the oil and gas and gas energy in the pool."

It is not claimed that a community agreement was required as a matter of law under the above-quoted statute. The permit to operate on the basis of a 10-acre unit was not granted by the supervisor or department of conservation on the ground that it was being so ordered under the authority of the statute; but instead the permit so to operate was issued on the assumption that a binding community agreement had been consummated. Clearly such assumption as applied to the Gruenbauers was erroneous. Nor do we find that the defendant appellants were estopped from denying any pooling or community agreement because, without their being

* See 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906).—Reporter.

in any way a party thereto, Van Mourik obtained a permit to operate the well at the rate of 100 barrels per day, and that the well was so operated after November 1, 1939. That the well was so operated did not work to the disadvantage of any of these litigants, but in fact was quite to the contrary.

Before Van Mourik secured the permit to operate at the rate of 100 barrels a day he had entered into an agreement with the other lessees as follows:

"It is understood and agreed that Van Mourik hereby accepts the responsibility for the development, operation and management of said 10 acres as a unit for the production of oil and gas and the payment of royalty to the various lessors as their interests appear (and also to the other lessees)."

Van Mourik was already under contract obligations to account for royalties to the parties who owned the 2-acre parcel, and by the agreement just above quoted he obligated himself for "the payment of royalty to the various lessors as their interests appear." Under the circumstances the main controversy in this case is in effect between Van Mourik and the Gruenbauers. Under the record we think he was obligated to pay royalties to the Gruenbauers on the basis of ⅛ of all the oil produced by means of the well on the Gruenbauers' 2 acres, notwithstanding Van Mourik had obtained a permit to operate the well as one located on a 10-acre unit. The decree entered in the circuit court on this phase of the case must be reversed.

Defendant Stephen J. Bolger and other defendants who through him have an interest in the royalties on production from the Gruenbauer well have appealed from the decree of the circuit court by which it was adjudicated that the royalties to be paid to these appellants should be computed on the

basis of the proportion of oil produced on the 2-acre tract as contradistinguished from the total production on the 10-acre unit. We are of the opinion that this conclusion on the part of the trial judge was correct. It is a fair conclusion from this record that neither Stephen J. Bolger or any of his assignees ever had any interest whatever in the petroleum deposit in this 10-acre tract except that portion under the Gruenbauer 2 acres. By his assignment of his lessee's interest in the Gruenbauer two acres to Van Mourik, Stephen J. Bolger divested himself of all interest except the reservation "unto himself a ¼ overriding royalty to said described 2 acres, and its oil, free and clear of any claims or interests whatever." The circuit judge in his opinion touching this phase of the case said: "It is significant that the assignment of his lease to Van Mourik reserved only a ¼ royalty 'to said described 2 acres' rather than ¼ of the production of the well. Bolger is an experienced operator in leasing oil and gas rights. * * * I find * * * that the language thereof was appropriate to and did express their intention that Bolger's royalty should be based upon the production which would be attributable to the 2 acres covered by that lease." The record supports the above finding and the decree in this respect should be affirmed.

Defendant Van Mourik urges that this appeal should be dismissed because no reasons or grounds for appeal were filed or embodied in the record at the time same was settled in the circuit court. This was called to the attention of the trial court at the time of settling the record, but over objection the record was settled without embodying therein reasons or grounds for appeal. Defendant Van Mourik did not at that time take any further steps to correct this defect, as he might well have done. The

record as printed does contain "assignments of error." These present the questions upon which appellants rely in this court, and timely advised appellees of the issues involved on this appeal. Notwithstanding the practice was in violation of Court Rule No. 66, § 3 (1933), since the case has been fully presented by record and briefs in this court, and because nothing would be gained by remanding the record to the lower court for correction at appellants' expense, we are not disposed to dismiss the appeal without passing upon the questions presented. See *Conely* v. *Dudley,* 111 Mich. 122.

A decree may be entered in this court in accordance with our opinion herein providing, subject to possible mathematical correction, that the respective parties to this suit are entitled to receive the past, present, and future proceeds of the Gruenbauer oil well in the following proportions:

| | |
|---|---|
| Gruenbauers | 80/640 |
| S. J. Bolger | 8/640 |
| P. J. Bolger | 8/640 |
| W. Milanowski | 6/640 |
| H. Milanowski | 6/640 |
| Smith Petroleum Co. | 34/640 |
| E. B. Strom | 34/640 |
| Van Euwens | 45/640 |
| Kasper | 13/640 |
| Zeeffs | 7/640 |
| Van Mourik | 399/640 |
| | 640/640 |

Appellants Gruenbauer and plaintiff appellees may tax costs of this Court against defendant and appellee Henry Van Mourik.

CHANDLER, C. J., and BOYLES, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. STARR, J., did not sit. WIEST, J., took no part in this decision.